# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| HELENA AGRI-ENTERPRISES, LLC, | CASE NO. 1:18-CV-00963-RJJ-RSK |
| *Plaintiff*, | Honorable Chief Judge Robert J. Jonker |
| v. | |
| GREAT LAKES GRAIN, LLC; BOERSEN FARMS AG, LLC, A MICHIGAN LIMITED LIABILITY COMPANY, BOERSEN FARMS, INC. A MICHIGAN CORPORATION, BOERSEN AG PARTNERS, LLC, A MICHIGAN LIMITED LIABILITY COMPANY, DENNIS BOERSEN,  ARLAN BOERSEN, SANDRA BOERSEN, | **PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 56(d) FOR ADDITIONAL DISCOVERY** <br><br> **<u>ORAL ARGUMENT REQUESTED</u>** |
| *Defendants*. | |

| | |
|---|---|
| Sheryl L. Toby (P39114) <br> Mark J. Magyar (P75090) <br> Dykema Gossett PLLC <br> Attorneys for Plaintiff <br> 300 Ottawa Ave. N.W. Suite 700 <br> Grand Rapids, Michigan  49503 <br> stoby@dykema.com <br> mmagyar@dykema.com <br> 616-776-7500 | Ronald J. VanderVeen (P33067) <br> Cunningham Dalman, PC <br> Attorneys for Defendants <br> 321 Settlers Road <br> Holland, MI 49423 <br> rjvv@cunninghamdalman.com <br> 616-392-1821 |

**INTRODUCTION**

The deadline for Plaintiff's response to Defendants' Motion for Summary Judgment should be extended for four reasons: (1) recent discovery has disclosed the existence of new witnesses and information which are relevant to Plaintiff's claims against Defendants; (2) Plaintiff has still not received the crop insurance documents from Great American Insurance Group which address the transfer and sharing of farming and production history between the legacy Boersen entities and the successor Boersen Defendants; (3) the deadline for Plaintiff's response to Defendants' Motion for Summary Judgment is scheduled to occur before the deposition transcripts of Nick and Stacy Boersen are finalized; and (4) the common-law factors governing the Court's decision on this Rule 56(d) Motion favor granting Plaintiff's request for an extension.

First, likely feeling the pressure of their self-imposed Catch-22,[1] Defendants revealed new details of the Boersen family enterprise in Stacy's deposition (*See* **Exhibit B**) and in their Motion for Summary Judgment, along with documents recently received from Defendants. In a single footnote, Defendants disclosed another layer to their remarkably sophisticated corporate structure—a non-judgment, non-party entity named, Boersen Farms Grain, "a Michigan general law partnership owned by 7 limited liability companies." (Doc. 140, PageID.1270, Brief in

---

[1] The Successor Boersen Defendants have likely realized that their continued position of claiming no relationship to the legacy/Judgment Boersen Defendants put them in a box. To use another farmer's actual production history ("APH") for the purpose of obtaining more favorable crop insurance premiums, the federal regulations applicable to crop insurance require that the user/transferee have (1) participated in the management of the legacy famer/transferor's farming operation and (2) participated in the farming activities of the legacy/transferor's farming operation. *See* U.S. DEP'T OF AGRIC., FED. CROP INS. CORP., RISK MGMT. AGENCY, PRODUCT ADMIN. AND STANDARDS DIV., 2020 CROP INS. HANDBOOK 239 (FCIC 18010-01) (Nov. 2019) ("Transfer of APH Data"). Plaintiff's discovery that the Successor Boersen Defendants have utilized APH from the legacy/Judgment Boersen Defendants have forced the Successor Defendants to retreat from their prior position, which argued that there was complete separation among the two groups of defendants, now that they need to meet the federal regulations applicable to the sharing of APH for crop insurance. Suddenly, the separation of the two groups of defendants is not so separate.

Support of Defendants' Motion for Summary Judgment 4 n.2).  This partnership and its seven limited liability company owners were not disclosed in Defendants' Rule 26 disclosures.  From the footnote, we learn that in addition to "farm[ing] part of the about 100,000 acres in 2016, part of the about 75,000 acres in 2017 and part of about 8,000 acres in 2018," one of the seven limited liability company owners, Dennis Russell, LLC, is owned, in part, by Stacy Boersen.  *Id.*  Similarly, while defendants have steadfastly denied receiving transfers of physical property for purposes of Plaintiff's voidable transfer claim, Stacy recently disclosed at her deposition and in documents defendants only recently produced that the New Heights defendants are paying upwards of $75,000 per month to a Dennis Boersen-owned company (yet another judgment free entity created by the Boersens) to "rent" his equipment to them.  In other words, Dennis Boersen continues to profit without paying creditors.  Plaintiff should be permitted to conduct discovery into the structure and activity of these newly disclosed partners to the Boersen family enterprise.

Second, Plaintiff needs additional time to receive and review the Boersens' crop insurance documents from Great American Insurance Group.  Plaintiff still does not have these documents, which were timely subpoenaed in early November, and which Plaintiff has diligently pursued from Great American.  *See* **Exhibit C** (Declaration of Attorney Zach Zurek).  In support of this point, Plaintiff attaches the declaration of crop insurance expert, Clifton Parker, as **Exhibit D**.  Mr. Parker confirms that there are notable irregularities in the crop insurance application documents currently possessed by Plaintiff, which indicate a strong likelihood that the Successor Defendants were improperly utilizing actual production history from the legacy/Judgment Boersen Defendants, or at least transferring the valuable history from a judgment entity to a non-judgment entity.  Mr. Parker highlights Plaintiff's need to receive and review the documents from Great American Insurance Group.  For this reason, Plaintiff needs

more time before it responds to Defendants' Motion for Summary Judgment.

Third, as it stands, Plaintiff's response to Defendants' Motion for Summary Judgment will be due before the deposition transcripts of Stacy and Nicholas Boersen are finalized. At their election, Defendants have until February 21, 2020 to revise and amend the transcripts of Nicholas and Stacy Boersens' depositions, (Docs. 135, 136), but Plaintiff's response to Defendants' Motion is due three days before then on February 18, 2020. The deadline for Plaintiff's response should be extended so that it may have certainty in its use of the deposition testimony of Stacy and Nicholas Boersen in its Response to Defendants' Motion.

Fourth, the five factors developed by Sixth Circuit precedent used to analyze a request for an extension under Rule 56(d) favor granting Plaintiff's requested extension. Plaintiff has been diligent in the discovery period and despite such efforts, Plaintiff has only recently learned significant facts, which significantly affect Plaintiff's claims in this lawsuit. The discovery period should be extended to allow Plaintiff to continue gathering information in support of its claims.

In sum, there are multiple reasons to extend the deadline for Plaintiff to respond to Defendants' Motion for Summary Judgment. Plaintiff previously moved the Court to amend the Third Amended Case Management Order with new deadlines that are entirely compatible with the trial and pre-trial settings for this case. Granting Plaintiff's Motion to Amend the Third Case Management Order will address all of the issues presented above. Plaintiff asks that the Court grant Plaintiff's Motion to Amend and grant this Motion so that Plaintiff has a fair opportunity to respond to Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(d) provides:

> <u>When Facts Are Unavailable to the Nonmovant.</u> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).

The Sixth Circuit Court of Appeals has explained that there are five (5) factors to consider when reviewing a motion for further discovery filed under Rule 56(d):

> (1) when the [movant for further discovery] learned of the issue that is the subject of the desired discovery;
> (2) whether the desired discovery would have changed the ruling below;
> (3) how long the discovery period had lasted;
> (4) whether the [movant for further discovery] was dilatory in its discovery efforts; and
> (5) whether the [non-movant] was responsive to discovery requests.

*Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019).

The Sixth Circuit has also "cited approvingly other circuits' view that '[a] . . . motion requesting time for additional discovery *should be granted almost as a matter of course* unless the non-moving party has not diligently pursued discovery of the evidence.'" *Doe*, 928 F.3d at 490–91 (citing *E.M.A. Nationwide, Inc.*, 767 F.3d at 623 n.7 (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012))) (emphasis added).

As explained below, the applicable standard of review supports granting this Motion and providing Plaintiff with additional time for discovery.

## EXHIBITS AND DECLARATION SUPPORTING MOTION

In support of this Motion, Plaintiff attaches the following exhibits and declarations for the Court's consideration:

**Exhibit A**   Defendants' January 16, 2019 Rule 26 Disclosures

5

**Exhibit B**     Excerpts from the January 15, 2020 Deposition of Stacy Boersen

**Exhibit C**     January 29, 2020 Declaration of Attorney Zach Zurek

**Exhibit D**     January 31, 2020 Declaration of Crop Insurance Expert Clifton Parker

**Exhibit E**     Excerpts from the January 15, 2020 Deposition of Nicholas Boersen

**Exhibit F**     February 7, 2020 Declaration of Wesley Belleville, Credit Director for Helena Agri-Enterprises, LLC

## ARGUMENT

Plaintiff's December 13, 2019 Motion to Amend the Third Case Management Order (Doc. 127, PageID.1186–88) is fully briefed and still pending before the Court. (Docs. 127, 128, 130, 131, 133). In Plaintiff's Motion to Amend, Plaintiff proposes the following revisions to the current Case Management Order:

| Action Item | Current Date/Limitation | Proposed Date/Limitation |
|---|---|---|
| Disclose Name, Address, Area of Expertise and a short summary of expected testimony of Expert Witnesses (Rule 26(a)(2)(A)) | | |
| -Party with the Burden of Proof: | March 31, 2019 | February 7, 2020[2] |
| -Responding Party: | April 30, 2019 | March 9, 2020 |
| Completion of Discovery | January 15, 2020 | April 14, 2020 |
| Dispositive Motions | March 8, 2020 | May 14, 2020 |
| Depositions will be limited to: (Fact Witnesses Per Party) | 10 per party | 20 per party |
| ADR To Take Place on or Before | January 15, 2020 | April 14, 2020 |

---

[2] Should the Court grant Plaintiff's Motion, Plaintiff's expert will be Clifton Parker, whose declaration at **Exhibit D**, describes his qualifications and expected opinions in this case.

By granting Plaintiff's Motion to Amend and extending Plaintiff's deadline to respond to Defendants' Motion for Summary Judgment until April 28, 2020, the issues discussed in this Motion will be resolved. Plaintiff's requested relief does not affect the trial date or the settlement and pretrial conferences scheduled under the current case management order. In short, granting Plaintiff the relief sought by this Motion will cause very little change to the current pace of this lawsuit and will allow Plaintiff a fair opportunity to conduct discovery toward its efforts of recovering some portion of the $13,000,000 lost to the Boersen family enterprise.

As addressed below, there are several recent developments in this case which require more time for discovery. Holding Plaintiff to the current deadline for its response to Defendants' Motion for Summary Judgment will cause significant facts to be left out of this Court's consideration. For the reasons set forth below, Plaintiff asks that this Court grant it additional time to conduct discovery and respond to Defendants' Motion for Summary Judgment as authorized under Rule 56(d).

**I.     Defendants Just Disclosed the Existence of New Witnesses and Information which are Relevant to Plaintiff's Claims Against the Defendants.**

Through Defendants' recent document production, depositions, and summary judgment brief, Plaintiff learned several new things relevant to Plaintiff's claims against the Defendants. First, the Boersen family has maintained control of their equipment through equipment leases which result in a Dennis Boersen-controlled entity receiving $75,000 per month from Nicholas and Stacy Boersen's entities. Second, Defendants just recently "fully disclos[ed]"[3] a key part of their enterprise, Boersen Farms Grain. And third, through their depositions, Nicholas and Stacy

---

[3] (Doc. 140, PageID.1270, Brief in Support of Defendants' Motion for Summary Judgment 4 n.2) ("*In full disclosure*, Arlan, Dennis and Ross had *another company* . . . .") (emphasis added).

Boersen explained that they heavily deferred to their crop insurance agent (the same used by the Boersen Judgment Defendants) regarding the information used to fill out their companies' crop insurance applications, which may have utilized valuable production history from the Judgment Boersen Defendants.

### A. Defendants recently disclosed an Equipment Lease that Paid Boersen Farms and Affiliates Through Dennis Boersen More Than $75,000 Per Month.

Stacy and Nicholas Boersen were deposed on January 15, 2020. During her deposition, Stacy Boersen testified that Great Lakes Grain, LLC and New Heights Farm I, LLC executed equipment leases in 2018 and 2019 with Boersen Farms & Affiliates, LLC ("Affiliates"), a non-judgment, non-party entity controlled by Dennis Boersen. (**Exhibit B**, January 15, 2020 Deposition of Stacy Boersen at 26:17 – 31:23). Pursuant to the terms of the leases, Great Lakes Grain, LLC and New Heights Farm I, LLC paid Affiliates $75,000 per company per month for the equipment. (**Exhibit B**, January 15, 2020 Deposition of Stacy Boersen at 80:19 – 81:1).

Nicholas Boersen testified that New Heights Farm II executed a similar equipment lease with Affiliates for $75,000 per month. (**Exhibit E,** January 15, 2020 Deposition of Nicholas Boersen at 32:23 – 34:1) The only person that Nicholas spoke to from Affiliates was his father, Dennis Boersen, and he was not able to name any of the other members of Boersen Farms and Affiliates, LLC. *See id*.

```
 5   Q.   Who was your contact person from Boersen Farms &
 6        Affiliates, LLC?
 7   A.   That would be my dad.
 8   Q.   Okay.  So do you think at least he is a member of
 9        Boersen Farms --
10   A.   I'm not very sure.
11   Q.   You don't know any of the members?
12   A.   Nope.  I don't know any of them.
13   Q.   But the only person that you talked to for the
14        equipment services agreement from the other
15        contracting party was your dad?
16   A.   Yep.
17   Q.   And it looks like the fee for that agreement was
18        $75,000 per month --
19   A.   That is correct.
```

Inexplicably, Nicholas Boersen refused to admit whether Affiliates was his father's company even though he testified that Dennis is the only person with whom Nicholas had contact. (**Exhibit E**, January 15, 2020 Deposition of Nicholas Boersen at 35:4 – 11). He also could not provide any testimony about how many pieces of equipment were included in the lease or whether the lease amount varies by month depending on the season and the equipment being leased. (**Exhibit E**, January 15, 2020 Deposition of Nicholas Boersen at 36:14 – 37:7).

Both Stacy and Nicholas testified that their entities are current on the payments to Affiliates for the equipment leases, which means that, between Great Lakes Grain, LLC, New Heights Farm I, LLC and New Heights Farm II, LLC, Dennis Boersen has pocketed $225,000 per month for 2018 and 2019. In total, the equipment leases alone for the three entities have amounted to more than $5.4 million in revenue that is going to a non-judgment, non-party Boersen entity controlled by Dennis Boersen.

If the Boersens are utilizing Affiliates to siphon money to Dennis Boersen and indirectly to the Boersen legacy entities, the activities, assets and organization of Affiliates and how the

entity is transferring or spending the $225,000 per month it has been receiving for the last two years is highly relevant to Plaintiff's claims in this case.  This information was just disclosed less than thirty days ago.  Plaintiff needs additional time to investigate this newly discovered entity and the funds being paid indirectly to Dennis Boersen so that it may fairly pursue its claims.

### B. Defendants Just Disclosed the Existence of Boersen Farms Grain, a Major Piece of the Boersen Family Enterprise.

During Stacy Boersen's deposition, another significant part of the Boersen family enterprise was uncovered—Boersen Farms Grain, a non-judgment, non-party "Michigan general law partnership owned by 7 limited liability companies."  (Doc. 140, PageID.1270, Brief in Support of Defendants' Motion for Summary Judgment 4 n.2); *see* **Exhibit B** (January 15, 2020 Deposition of Stacy Boersen at 13:22–14:1).  Coincidentally, it is one of these seven limited liability companies, Dennis Russell, LLC, that provides Defendant New Heights Farm I, LLC ("NHF-I") with its alleged vindication of what otherwise would be an impermissible transfer of valuable farming history used to obtain and reduce premiums for crop insurance.  *Compare* (Doc. 140, PageID.1284, Brief in Support of Defendants' Motion for Summary Judgment 18), *with* U.S. DEP'T OF AGRIC., FED. CROP INS. CORP., RISK MGMT. AGENCY, PRODUCT ADMIN. AND STANDARDS DIV., 2020 CROP INS. HANDBOOK 239 (FCIC 18010-01) (Nov. 2019) ("Transfer of APH Data").

Because Boersen Farms Grain is not incorporated with the State of Michigan, it could not be located by public records searches.  Defendants' Brief explains that "Boersen Farms Grain farmed part of the about 100,000 acres in 2016, part of the about 75,000 acres in 2017 and part of about 8,000 acres in 2018."  (Doc. 140, PageID.1270, Brief in Support of Defendants' Motion for Summary Judgment 4 n.2).

Importantly, after Defendants recent disclosure of the part played by Boersen Farms Grain, Plaintiff searched its records for "Boersen Farms Grain" and found checks paid by "Boersen Farms Grain" toward an account owned by "Boersen Farms, Inc." **Exhibit F** (Declaration of Wesley Belleville). Boersen Farms Grain's payment toward the debts of another entity certainly supports that Boersen Farms Grain "assum[ed] the liabilities and obligations [of Boersen Farms, Inc.] necessary for uninterrupted continuation of business operations"—one of the four factors of successor liability according to Defendants' Brief. (Doc. 140, PageID.1278, Defendants' Brief 12) (quoting *C.T. Charlton & Assocs. v. Thule, Inc.*, 541 F. App'x 549, 552 (6th Cir. 2013)).

In this successor liability/voidable transfer/veil piercing lawsuit, clearly the activities, assets, and organization of this new entity, and its relationship to the Judgment Defendants, is highly relevant to Plaintiff's case. Plaintiff asks the Court for additional time to conduct discovery regarding this newly discovered entity and its seven limited liability companies so that it may fairly pursue its claims.

### C. Nicholas and Stacy Boersen heavily deferred to their crop insurance agent and Plaintiff needs additional time to obtain discovery from the agent.

According to their deposition testimony, Nicholas and Stacy relied heavily on their insurance agent, Chris Shellenbarger, to apply for and obtain crop insurance for their respective entities. (**Exhibit B**, Deposition of Stacy Boersen, 37:18 – 21; **Exhibit E,** Deposition of Nicholas Boersen, 10:18 – 11:6). Stacy called Ms. Shellenbarger, the same insurance agent who has served the Boersen legacy entities for years, and Ms. Shellenbarger "set it all up." (**Exhibit B**, Deposition of Stacy Boersen, 37:18 – 24). Stacy did not submit any information to her agent regarding Great Lakes Grain, LLC's actual production history, which is required for the crop insurance application, and she did not know what information the agent relied upon for the

11

application.  (**Exhibit B**, Deposition of Stacy Boersen, 45:4 – 46:2).  Notably, Ms. Shellenbarger is the same agent who has served the legacy Boersen entities and submitted crop insurance applications on their behalf in prior years.  (**Exhibit B**, Deposition of Stacy Boersen, 45:21 – 46:7).  Stacy specifically testified that the only information she provided the insurance agent was a list of the farms that Great Lakes Grain, LLC was farming – nothing more, nothing less.  (**Exhibit B**, Deposition of Stacy Boersen, 47:3–7).  Pursuant to Stacy's explicit testimony, neither Great Lakes Grain, LLC nor New Heights Farm I, LLC operated as a beginning farmer under the applicable regulations.  (**Exhibit B**, Deposition of Stacy Boersen, 47:19–48:7).

With respect to the crop insurance application process for New Heights Farm II, LLC, Nicholas similarly testified that he did not receive any request for documentation from Ms. Shellenbarger or provide any information for the insurance application.  (**Exhibit E**, Deposition of Nicholas Boersen, 11:3 – 6).  Notably, he does not have any idea of what information is even required to complete his crop insurance application.  (**Exhibit E**, Deposition of Nicholas Boersen, 11:7 – 11).  According to his testimony, he "put the ball in [Ms. Shellenbarger's] court" and she did not ask him for further documentation or information.  (**Exhibit E**, Deposition of Nicholas Boersen, 11:12 – 15).  Based on his limited knowledge of insurance, Nicholas testified that he is part of the "young farmer program" but could not provide any specific information about why he qualifies or even the requirements of the program.  (**Exhibit E**, Deposition of Nicholas Boersen, 11:19 – 12:3).   He "assumed" he met whatever requirements there may be but he deferred to his crop insurance agent entirely for any questions related to that issue.  *See id*.

It is clear Nicholas and Stacy Boersen are utilizing crop insurance for their benefit and even relying on crop insurance revenue to pay off debts.  What is not clear is how or why Nicholas and Stacy Boersen qualify for the particular coverage they are receiving for Great

Lakes Grain, LLC, New Heights Farm I, LLC and New Heights Farm II, LLC.  What is also not clear is whether the non-judgment entities are obtaining value from any of the legacy Boersen entities by relying on their actual production histories to improve crop insurance coverage and premiums in violation of the applicable regulations.  Plaintiff needs additional time to discover this information, much of which was recently disclosed in depositions, in order to respond to the motion for summary judgment.

**II.     Plaintiff needs additional time to receive and review the Boersens' crop insurance documents from Great American Insurance Group.**

As addressed in Plaintiff's prior briefing (Docs. 98 and 128), Plaintiff has focused part of its discovery efforts on the crop insurance purchased by the Judgment and Successor Defendants in recent years.  Following Plaintiff's receipt and review of documents from the USDA's Risk Management Agency ("RMA") and Farm Services Agency ("FSA") relevant to Defendants' crop insurance, Plaintiff discovered that Great American Insurance was the private insurer for most of the crop insurance policies purchased by the Judgment and Successor Defendants for 2014 to present.  Because the RMA and FSA only provide part of the information needed to analyze its claims against the Defendants, Plaintiff requires documents from Great American Insurance.

On November 11, 2019, Helena issued seven (7) Notices of Intention to Take Deposition by Written Questions with document requests ("Subpoenas") to Great American Insurance for documents relevant to the Defendants' crop insurance.  The subpoenas were all served upon Great American Insurance on November 14, 2019.

Great American Insurance first reached out to Plaintiff on November 25, 2019.  Between Thanksgiving and New Year's, Plaintiff attempted to work with Great American Insurance to facilitate a convenient and efficient transfer of the requested documents.  **Exhibit C** (Declaration

13

of Attorney Zach Zurek). Then, on January 8, 2020, after much back-and-forth, Great American Insurance indicated that it would be producing documents in the "next few days." *Id.* But on January 15, 2020, Great American Insurance informed Plaintiff that it would be retaining outside counsel to assist with the production process. *Id.* Later that same day, counsel for Plaintiff reached out to the outside counsel disclosed by Great American Insurance, Greg Harrison. *Id.* On January 21, 2020, counsel for Plaintiff spoke with Mr. Harrison. *Id.* Mr. Harrison explained that he would consult with Great American about what was needed to produce the documents sought by Plaintiff and indicated that it might require an authorization from the Defendants. *Id.* Plaintiff is now attempting to secure the authorizations from Defendants so that it can obtain the documents from Great American Insurance.

Plaintiff must obtain and review the documents from Great American Insurance to follow through with its analysis of the transfer and sharing of APH farming history among the Boersen family enterprise. This point is supported by the Declaration of Clifton Parker, attached to this Brief as **Exhibit D**. Mr. Parker, the former Assistant Deputy Administrator for Insurance Services for the United States Department of Agriculture, Risk Management Agency, confirms that there are irregularities in the crop insurance application documents currently possessed by Plaintiff, which indicate a likelihood that the Successor Defendants were improperly utilizing actual production history from the legacy/Judgment Boersen Defendants, or at least transferring the valuable history from a judgment entity to a non-judgment entity. *See* **Exhibit D** (Parker Declaration). Mr. Parker echoes Plaintiff's need to receive and review the documents from Great American Insurance Group. *Id.* For this reason, Plaintiff needs more time before it responds to Defendants' Motion for Summary Judgment.

**III.     The deadline for Plaintiff's response to Defendants' Motion for Summary Judgment will occur before the deposition transcripts of Nick and Stacy Boersen are finalized.**

Plaintiff's response to Defendants' Motion for Summary Judgment will be due before the deposition transcripts of Stacy and Nicholas Boersen are finalized. At their election (just before they filed their motion for summary judgment) Defendants have until February 21, 2020 to revise and amend the transcripts of Nicholas and Stacy Boersens' depositions, (RE 135, 136), but Plaintiff's response to Defendants' Motion is due three days before on February 18, 2020. This timeline gives Defendants the opportunity to review the deposition testimony that Plaintiff uses in its Response to Defendants' Motion for Summary Judgment and then revise the testimony of Nicholas and Stacy Boersen as they deem helpful. This procedural issue potentially frustrates any response that Plaintiff might prepare to Defendants' Motion for Summary Judgment. The deadline for Plaintiff's response should be extended so that it may have certainty in its use of the deposition testimony of Stacy and Nicholas Boersen in its Response to Defendants' Motion.

**IV.     The factors governing the Court's decision under Rule 56(d) favor granting Plaintiff's request for an extension.**

The Sixth Circuit's factors[4] governing the review of a Rule 56(d) motion favor granting Plaintiff's Motion. Plaintiff has just recently learned facts, which could materially affect its claims against the Defendants. The discovery period has been relatively brief (and would span a normal amount of time even with Plaintiff's proposed extensions) and Plaintiff has been diligent with its time. Under the standard set forth by the Sixth Circuit, Plaintiff's Motion should be granted.

---

[4] (1) when the [movant for further discovery] learned of the issue that is the subject of the desired discovery;
(2) whether the desired discovery would have changed the ruling below;
(3) how long the discovery period had lasted;
(4) whether the [movant for further discovery] was dilatory in its discovery efforts; and
(5) whether the [non-movant] was responsive to discovery requests.
*Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019).

### A. Helena just recently learned of the issues that are the subject of the desired discovery.

As addressed above, Helena has only recently (January 2020) learned of Boersen Farms Grain and its seven limited liability owners. Additionally, Plaintiff still has not received the documents it requested from Great American Insurance Company this past November. These new and forthcoming facts are sufficiently recent to justify the reasonable extension Plaintiff requests.

### B. The discovery Helena seeks will affect the merits of its claims against the Defendants.

Looking to the standard cited in Plaintiff's Brief, the Sixth Circuit examines a number of factors when deciding "whether to disregard the corporate form, including: '(1) the absence of normal corporate formalities; (2) commingling of personal and corporate funds; (3) siphoning of corporate funds by a dominant stockholder; and (4) the fact that the corporation is merely a facade for the personal operations of the dominant stockholder.'" *Scarff Bros. v. Bischer Farms*, 386 F. App'x 518, 525 (6th Cir. 2010) (quoting *United States v. Walton*, 909 F.2d 915, 928 (6th Cir. 1990)). Because of the uniqueness of each case, the Court explained that "[n]o single factor is dispositive" and each case" must be decided in accordance with its own underlying facts." *Id.* Here, although Defendants' Brief attempts to rationalize the complexity of the enterprise of Boersen family entities, discovery into the relationship and interplay of the seven (7) newly discovered limited liability companies will certainly impact Plaintiff's claims, which hinge on whether there is an "absence of normal corporate formalities" and whether the entities are "merely a facade for the personal operations of the dominant stockholder." *See id.*; *see Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587 (2016) ("Fraudulent conveyances typically involve 'a transfer to a <u>close relative</u>, a <u>secret transfer</u>, a transfer of title without transfer of possession, or grossly inadequate consideration.'") (emphasis added). The information

recently learned about the equipment leases among the Boersen family enterprise and the documents and information to be obtained from Great American will also bear upon these factors; therefore, this Court should grant Plaintiff the opportunity to gather, analyze, and use these facts in support of its case.

### C. The discovery period has been relatively brief for the $13,000,000 damages at issue.

The Court's Rule 16 Conference occurred in this case on November 16, 2018. Using that date as the starting point, the discovery period has been open for just over a year. Helena has lost over $13,000,000 to the Boersen family. At this time, there are twenty-one (21) known Boersen corporate entities. For a case of this magnitude and a debtor as intricately complex as the Boersen family enterprise, the discovery period has been relatively brief. Plaintiff seeks to add little more than two months to the discovery period, which is currently closed. In sum, the discovery period has not been so long as to weigh against Plaintiff's request for additional time.

### D. Helena has been diligent in the discovery period.

Plaintiff has been diligent during the discovery period in this case. At the beginning, much time was dedicated to briefing and argument related to taking a judgment against the Boersen Judgment Defendants and then adding the Successor Boersen Defendants. Then, Plaintiff issued subpoenas to the Boersens' financial service providers and obtained approximately 4,860 pages of documents and deposed the corporate representative of Ceres Farm, LLC and Farmland Capital Solutions. Next, after much effort with the federal government and Defendants' counsel, Plaintiff recovered approximately 1,406 pages of documents from the USDA's Farm Service Agency, and 1,528 pages of documents from the USDA's Risk Management Agency. Plaintiff then reviewed these documents and issued a subpoena to the private insurance company for many of Defendants' crop insurance policies, Great American

Insurance Company. After that, Plaintiff spent time locating a crop insurance expert (Clifton Parker). Once equipped with a foundation of information obtained from its efforts, Plaintiff then issued targeted written discovery to the Defendants and deposed Stacy and Nicholas Boersen. Defendants may question Plaintiff's strategy in discovery, but Plaintiff has been diligent. Despite its diligence, Plaintiff has run out of time. Plaintiff asks the Court for a reasonable extension to see its efforts to their conclusion so that it may respond fully to Defendants' Motion.

**E. The Defendants have been reasonably responsive to Helena's discovery requests, but they failed to disclose key witnesses to the Boersen Family Enterprise.**

For the discovery that Plaintiff has directed toward the Defendants, Defendants have been reasonably responsive and cooperative. However, examining the number of parties referenced in Defendants' Brief in support of their Motion for Summary Judgment against the number of parties disclosed in their Rule 26 initial disclosures shows that Defendants failed to fairly comply with the requirement of providing "the name . . . of each individual likely to have discoverable information." FED. R. CIV. P. 26(a)(1)(A)(i); *compare* (Doc. 140, Defendants' Brief), *with* **Exhibit A** (Rule 26 Disclosures). Had Defendants disclosed the numerous entities involved in the Boersen family operation, it is likely that Plaintiff could have avoided the need for this extension of time. But since Defendants failed to do so, Plaintiff asks that the Court provide it with more time to conduct discovery.

## ORAL ARGUMENT REQUESTED

Pursuant to LCivR 7.3(d), Plaintiff requests that this Court set this Motion for oral argument.

## CONCLUSION

For the foregoing reasons, Plaintiff Helena Agri-Enterprises, LLC respectfully requests that this Court:

(1) grant this motion;

(2) enter an order for relief consistent with Rule 56(d), which grants Plaintiff's Motion to Amend the Third Amended Case Management Order, adopts the new deadlines proposed therein (Doc. 127, PageID.1186–88), and extends Plaintiff's deadline to respond to Defendants' Motion for Summary judgment until April 28, 2020; and

(3) grant such other relief as this Court deems just.

Dated:  February 7, 2020

Respectfully submitted,

**DYKEMA GOSSETT PLLC**
By: */s/ Mark J. Maygar*
Sheryl L. Toby (P39411)
Mark J. Maygar (P75090)
300 Ottawa Ave. N.W., Suite 700
Grand Rapids, MI 49503
stoby@dykema.com
mmagyar@dykema.com

**JACKSON WALKER LLP**
By: */s/ Robert L. Soza, Jr.*
Robert L. Soza, Jr. (admitted *pro hac vice*)
Texas State Bar No. 18869300
112 E. Pecan, Suite 2400
San Antonio, Texas  78205
rsoza@jw.com

**ATTORNEYS FOR PLAINTIFF**